IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| BARRY YEAGER and RAMONA YEAGER, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) Civil Action No. 1:19-cv-1040-KD-N ) |
| ADVANCED DISPOSAL SERVICES ALABAMA, LLC; ADVANCED DISPOSAL SERVICES MOBILE TRANSFER STATION, LLC; and MR. BULT'S, INC., | ) ) ) ) ) ) ) |
| Defendants. | ) |

**ORDER**

This action is before the Court on the Motions for Summary Judgment filed by Defendants Mr. Bult's, Inc. (Doc. 63) and Advanced Disposal Services Alabama, LLC and Advanced Disposal Services Mobile Transfer Station, LLC (Doc. 65); the Response filed by Plaintiffs Barry and Ramona Yeager (Doc. 70); and Defendants' Replies (Docs. 73, 44).

**I.   Findings of Fact[1]**

Barry and Ramona Yeager built a home on 5751 Carol Plantation Road, Theodore, Alabama 36582 (the "**Residence**") and have resided there for the past 32 years. In late 2010, Advanced Disposal Services Alabama, LLC and Advanced Disposal Services Mobile Transfer Station, LLC ("**ADS**") initiated plans to construct a solid-putrescible-waste-transfer station at 5740 Carol Plantation Road, Theodore Alabama (the "**Transfer Station**"), across the street from the Residence and erected the Transfer Station in 2011. The Transfer Station was granted a

---

[1] At the summary judgment stage, the facts are taken in the light most favorable to the non-movant. Tipton v. Bergrohr GMBH–Siegen, 965 F.2d 994, 998-99 (11th Cir. 1992). The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." Priester v. City of Riviera Beach, 208 F.3d 919, 925 n. 3 (11th Cir. 2000).

1

"Solid Waste Transfer Station Permit" by the Alabama Department of Public Health ("**ADPH**") on December 2, 2011, acknowledging the Transfer Station's compliance with local rules and regulations and began operating shortly thereafter. (Doc. 66-9 at 2). ADS is responsible for operating and maintaining the Transfer Station in compliance with Alabama and local regulations.

In 2016 in Ex parte Torbert, 224 So.3d 598, 602 (Ala. 2016), the Supreme Court held that the "loading bay" of the ADS Transfer Station was within 500 feet from the nearest residence and thus the Transfer Station was non-compliant. Subsequently, ADS received a variance from the ADPH. However, less than a year later, the controlling statute was amended to clarify that the 500 foot measurement is to be taken from the tipping floor. See Ala. Admin Code R. 420-3-5-.12(2)(a).  Accordingly, the variance was no longer needed and ADS was in compliance with the 500 foot buffer zone. See Doc. 66 at 7-8.

The Transfer Station is inspected by the Alabama Department of Public Health annually to ensure it continues its operations in compliance with Alabama regulations.  The Transfer Station has received inspection scores of 95 and higher from 2012-2018, the years prior to the filing of this action. (Doc. 64-9; Doc. 66-16). The Transfer Station's permit has been renewed annually by the Alabama Department of Public Health since its inception; compliance with regulations is required for the permit to be renewed. (Doc. 66-15).

Plaintiffs allege that the Transfer Station is non-compliant with the 500 foot buffer zone as set out in Alabama Administrative Code Rule 420-3-5-.12(2)(a)[2] since their front porch is

---

[2] "(2) **Location.** The location of a transfer station shall meet the following siting requirements: (a) The facility shall be surrounded by buffer zones of the following proportions unless such facility is located in an area zoned industrial or commercial. Measurements will be taken from the tipping floor.
    1. One hundred feet from all public roads and other property boundaries.
    2. Five hundred feet from the nearest residence, school, recreational park, day care facility, or food service or food handling establishment in existence at the time the application is filed."

allegedly 492 feet from the appropriate measuring point within the Transfer Station. Plaintiffs' Expert Witness testified that the Residence is 492 feet from the tipping point in violation of the required 500 foot buffer zone if the front porch is included when measuring the distance. (Doc. 70-18 at 4). Plaintiffs' expert also testified that the Residence is outside of the 500 foot buffer zone if the front porch is excluded from the measurement. (Doc. 70-18 at 4).

The nature of the Transfer Station's operations require large trucks to bring and dispose of sizeable amounts of trash. This results in a wide array of garbage trucks coming to and from the Transfer Station via public roads throughout the day. Consequently, the noise from the garbage trucks occasionally wakes up the Yeagers. In addition to the noise from the garbage trucks, trash occasionally flies off of them and into Carol Plantation Road and the Yeagers' yard. Pursuant to the Transfer Station's operation agreement, "all incoming waste vehicles are required to have their loads tarped upon arrival at the transfer station, or the load must be fully enclosed." (Doc. 70-19 at 11).

Mr. Bult's Inc. ("**MBI**") is paid by ADS to load and transport waste *from* the Transfer Station to a landfill. (Doc. 64-10 at 4; Doc. 70-3 at 12-13). MBI is required to perform its services in "strict compliance with the permits and other regulatory approvals applicable to the Transfer Station." (Doc. 66-13 at 4). Specifically, MBI is required to tarp their trailers, timely move waste, and maintain documents related to their services. (Doc. 66-13 at 3). In order to combat the spilled trash, ADS employs individuals to pick up loose trash on and around Carol Plantation Road. (Doc. 64-1 at 13; 66-14 at 5).

The Yeagers also complain that odor periodically emanates from the transfer station to their property. The Yeagers have hosted events at the residence in the past where invitees

---

Ala. Admin Code r. 420-3-5-.12(2)(a).

commented on a foul odor being present. However, an event at the residence has never been cancelled nor has anyone ever left as a result of the odor, although functions have been moved indoors.

In addition to the foul odor and increased volume of large trucks, the Yeagers complain of rats and seagulls that they attribute to the Transfer Station's operations. The Yeagers also had a rat problem prior to the construction of the Transfer Station, as Terminix has been regularly coming to the residence for the past 30 years. Additionally, the Yeager's son cleared two acres of land next door to the residence. Mr. Yeager agrees that the clearing of the land and geography of the residence could contribute to the presence of rats. (Doc. 64-1 at 13). The Yeagers have purchased rat poison on an annual basis at an expense of fourteen dollars per year. (Doc. 64-2 at 6).

Seagulls were not consistently present at the residence until the completion of the Transfer Station. (Doc. 64-1 at 15). The seagulls defecate on the Residence's metal roof. (Doc. 64-2 at 6). The Yeagers have purchased and used a cleaning product on their roof once over the past 3 years. (Doc. 64-2 at 6).

The Yeagers also allege the Residence has declined in property value since the Transfer Station was constructed across the street. (Doc. 64-1 at 16; Doc. 64-2 at 14). The Yeagers have not had the Residence appraised since 2010 to confirm their beliefs. (Doc. 64-1 at 16; Doc. 64-2 at 14). Nor have the Yeagers attempted to sell their residence or provided any evidence of a diminution in property value. (Doc. 64-1 at 16; Doc. 64-2 at 14). Instead, the Yeager's rely on their own opinion that the residence has diminished in value.

According to the Mobile County Revenue Commissioner's office, whose valuation the Yeagers disagree with, the Residence has consistently gone up in value since the Transfer

Station's inception. (Doc. 64-1 at 17; Doc. 64-2 at 14). ADS's real estate expert's analysis "concluded that there was no negative impact on the value of properties in the immediate area" surrounding the Transfer Station, and that "the sales of properties within several hundred feet to a thousand feet were ongoing and showed an increase in value over the time from before [the Transfer Station] showed up until today." (Doc. 66-19 at 4). The Yeagers did not submit a real estate value analysis.

The Yeagers also claim to experience mental anguish as a result of the location on the Transfer Station. (Doc. 64-1 at 17; Doc. 64-2 at 15). Ms. Yeager's alleged mental anguish stems from the embarrassment of living across the street from a garbage facility and frustration over the odor and vermin. (Doc. 64-2 at 15). There is no evidence of her seeking medical assistance or experiencing physical ailments. (Doc. 64-2). Mr. Yeager's alleged mental anguish stems from his belief that it is "embarrassing that a transfer station is right across the street." (Doc. 64-1 at 18). Mr. Yeager testified that he has never seen a doctor to get medicine nor experienced any physical ailments. (Doc. 64-1 at 17).

The Yeagers filed this action October 30, 2019. (Doc. 1-3 at 12). The Yeagers assert five claims against Defendants for: 1) Nuisance; 2) Wanton conduct; 3) Negligent operations; 4) Injunctive relief; and 5) Violation of Alabama Administrative Code Rule 420-3-5-.12(2)(a). (Doc. 1-3).

## II.  Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   Rule 56(c) provides as follows:

*(c) Procedures*

>    ***(1) Supporting Factual Positions.*** A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
>    **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
>    **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
>    ***(2) Objection That a Fact Is Not Supported by Admissible Evidence.*** A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
>    ***(3) Materials Not Cited.*** The court need consider only the cited materials, but it may consider other materials in the record.
>
>    ***(4) Affidavits or Declarations.*** An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed.R.Civ.P. Rule 56(c).

The party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  If the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. Celotex, 477 U.S. at 323. "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter.  Instead, the evidence of the non-

movant is to be believed, and all justifiable inferences are to be drawn in his favor." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992).

### III. Analyses

#### A. Nuisance claim

The Yeagers allege Defendants' operations cause trash and noise on the adjoining public road, odor, an increase in rats, and the presence of seagulls, which constitute a nuisance pursuant to Alabama Code 1975 § 6-5-120 and the common law. Alabama law defines a nuisance as "anything that works hurt, inconvenience, or damage to another. The fact that the act done may otherwise be lawful does not keep it from being a nuisance. The inconvenience complained of must not be fanciful or such as would affect only one of a fastidious taste, but it should be such as would affect an ordinary reasonable man." Ala. Code. 1975 § 6-5-120. "The Alabama Supreme Court has held that this statutory definition of nuisance is 'declaratory of the common law and does not supersede it as to the other conditions and circumstances constituting a nuisance under common law.'" Woods v. United States Steel Corp., No. 2:17-CV-00883-RDP, 2018 WL 6067502, at *6 (N.D. Ala. Nov. 20, 2018) (citing Lauderdale Cty. Bd. of Ed. v. Alexander, 110 So. 2d 911, 915 (Ala. 1959).

An important "common-law requirement of any nuisance claim is that the plaintiff must prove 'the elements of legal duty and causal relation between the conduct or activity complained of and the hurt, inconvenience, or damage sued for.'" Woods at *6 (N.D. Ala. Nov. 20, 2018) (citing Tipler v. McKenzie Tank Lines, 547 So. 2d 438, 440 (Ala. 1989); see also Chambers v. Summerville United Methodist Church, Inc., 675 So.2d 1315, 1316 (Ala. Civ. App. 1996) (The party claiming a nuisance "must ... prove the tort elements of duty and causation in order to make a prima facie case of nuisance.") (quoting Commonwealth Savingshares Corp. v. Fayetteville

Holdings, LLC, 250 So. 3d 592, 601 (Ala. Civ. App. 2017)). "Even assuming that the determination of causation is properly a factual issue for the jury, there yet remains the threshold issue of legal duty." Tipler, 547 So. 2d 441.

In sum, a nuisance claim requires a Plaintiff to prove four elements: "(1) activities that worked hurt, inconvenience, or damage to the complaining party, (2) breach of a legal duty owed, (3) causal relation between the conduct or activity complained of and the hurt, inconvenience, or damage sued for, and (4) damages." LaBauve v. Olin Corp., 231 F.R.D. 632, 673 (S.D. Ala. 2005) (citing Tipler, 547 So.2d 440).

The Yeagers initially argue ADS owns and operates a nuisance within 500 feet of [their] home in violation of the Alabama Administrative Code. This argument is made despite the fact that the ADPH has determined otherwise and permitted the operation as being compliant with the 500 foot rule. Essentially, through their Ala. Admin Code R. 420-3-.12(2) claim, the Yeagers are asking this Court to overrule a State Agency's decision that the Transfer Station is compliant with the Code. However, such a request can only be made by requesting judicial review of the agency decision. Ex parte Torbert, 224 So. 3d 598, 599 (Ala. 2016) (Section 41–22–20(k), Ala. Code 1975, governs judicial review of administrative decisions.)

Moreover, the Yeagers have failed to provide any authority that a private right of action was created by Ala. Admin Code R. 420-3-.12(2). "One claiming a private right of action within a statutory scheme must show clear evidence of a legislative intent to impose civil liability for a violation of the statute." American Auto. Ins. Co. v. McDonald, 812 So.2d 309, 311 (Ala. 2001). The Yeager's claim under Ala. Admin Code R. 420-3-.12(2) fails as a matter of law.

However, the Yeagers state that the violation of buffer zone requirements is not the linchpin of their nuisance claims. The Yeagers assert the claim of nuisance is based on the smell,

8

the noise, the garbage in their yard, and the garbage truck traffic. They urge that whether ADS has created a nuisance and the level of damages is for a jury to determine.

As previously noted, a nuisance claim requires the Yeagers to prove legal duty and causation. Regarding the complaint of trash on the roadways, Ala. Admin. Code R. 420-3-5-.11(3)(c)8 places the duty on garbage trucks to cover their loads.[3] ADS echoes this requirement in their operation plans which requires all trucks entering the property to cover the trash. From this fact, the Yeagers allege that ADS owes a duty to prevent third-party trucks from creating a trash nuisance on the public roads that lead to the Transfer station.

First, the Court notes that the Yeagers have failed to provide any evidence that MBI's and ADS's trailers have not complied with the requirement to keep trash covered or that these trailers are the source of the trash.[4] However, there is evidence of garbage trucks owned by third parties that are uncovered and there is evidence of trash on the public roads close to the Transfer Station.

The Court agrees with the Yeagers that ADS could certainly lessen the trash on the public road shoulder by turning away trucks that have uncovered loads. Over time, no doubt this act would cause the trucks to comply with the law and likely reduce the blown debris that the Yeagers allege is a nuisance. However, the administrative law has clearly placed the duty on the trucks to cover their loads. And "[t]he liability for a nuisance springs from the wrongful act of

---

[3] "(3) **Equipment.** All vehicles and equipment used for the collection or transportation of solid waste containing garbage shall be constructed, operated, and maintained so as to prevent the creation of a public health nuisance and to meet the requirements of these Rules. (c) Vehicles used for the collection or transportation of solid waste containing garbage shall be constructed, operated, and maintained in a manner to prevent the escape of solid, semi-solid, or liquid waste and shall adhere to the following standards: 8. Effective control of windblown litter or other waste shall be maintained through the use of adequate restraints where necessary, including tarps or other devices, while the vehicle is in operation or contains solid waste containing garbage. Vehicles not equipped to effectively control wind-blown litter are prohibited." Ala. Admin. Code 420-3-5-.11(3)(c)8.

[4] Mr. Yeager testified that he saw an ADS truck with bags caught in the crusher, but provided nothing but speculation that an ADS truck was the source of the trash on the road.

creating or continuing it, rather than from owning or occupying the premises." Tennessee Coal, Iron & R. Co. v. Hartline, 244 Ala. 116, 122, 11 So. 2d 833, 837 (1943). In other words, it is the person who creates the nuisance that is liable. There simply is no support for the proposition that ADS (or MBI) can be held liable for a nuisance that is created by a third party and occurs on property that ADS does not own or control. Thus, the Yeager's claim for nuisance against ADS based on third-party trucks producing windblown litter fails as a matter of law.

The same analysis applies to the Yeager's complaint of road noise from third-party trucks; ADS does not have a legal duty to control the noise made by third-party garbage trucks on public roads.

However, the Yeagers also claim that ADS trucks were directly responsible for the noise. Specifically, Ms. Yeager claims that ADS trucks make a lot of noise and that she is occasionally awakened at 5:30 a.m. by ADS trucks when they brake to turn into the facility.  (Doc. 70-21 at 13).

"[A]ny establishment erected on the premises of the owner, though for the purposes of trade or business lawful in itself, which, from the situation, the inherent qualities of the business, or the manner in which it is conducted, … produces material annoyance and inconvenience to the occupants of adjacent dwellings, rendering them physically uncomfortable, is a nuisance. In applying this principle, it has been repeatedly held that smoke, offensive odors, noise or vibrations, when of such degree or extent as to **materially interfere** with the ordinary comfort of human existence, will constitute a nuisance." Coleman v. Estes, 201 So. 2d 391, 395 (1967). The question is whether being awakened early by ADS trucks traveling on a public highway is sufficient evidence from which a reasonable jury could find a material interference with the Yeager's ordinary comfort. The Alabama Supreme Court has indicated it is not. As explained in

Fugazzoto v. Brookwood One, 325 So. 2d 161, 162 (1976), "[t]he question of whether an activity which increases automobile traffic on public roads is enjoinable as a nuisance was addressed by this Court in Drennen v. Mason, 222 Ala. 652, 133 So. 689 (1931). In that case this Court stated that, 'The noises of increased automobile traffic, the stopping, starting and shifting gears, incident to the rightful use of a public street, cannot be regarded in this day as substantial cause for injunctive relief which deprives the citizen of the use of his property.'"

Next, the Yeagers complain of the odor that emanates from the Transfer station. Specifically, the Yeagers testified that on occasion when they are outside, offensive odor has been detected and once interfered with an outdoor activity. The Yeagers also cite an expert who states that transfer stations can create an odor (but without claiming the transfer station ADS operates produces a foul odor that leaks onto the Yeager's property). Assuming that the Yeagers evidence is sufficient to establish that it is ADS's transfer station that creates the offensive odor, the Yeagers have failed to show that the odor materially interfered with their physical comfort and created a nuisance. "A nuisance involves the idea of continuity or recurrence." Banks v. Harbin, 500 So. 2d 1027, 1029 (Ala. 1986)(citation omitted). And it must materially interfere with their physical comfort. The evidence of an occasional odor that on one occasion required an outdoor event to be moved indoors is insufficient for a reasonable jury to find that the odor is a nuisance under the law.

The Yeagers also claim that the Transfer Station's operations have attracted rats and seagulls to their property, but provide no proof other than a statement from ADS's expert that simply states vectors are attracted to waste. This general observation without any evidentiary support showing the Transfer Station caused the presence of seagulls or an uptick in rats around the Yeager's Residence does not satisfy the causation requirement. Thus, the Yeager's nuisance

claim based on the presence of rats and seagulls fails as a matter of law for lack of evidence to support the claim.

The Yeagers also claim that the location of the Transfer Station devalues their property. (Doc. 70-20 at 18).  However, Mr. Yeager also stated that he could not testify to the value of his house. (Doc. 70-20 at 16). And Ms. Yeager simply disagreed with the Mobile County Revenue Commission's tax records which showed an increase in value since the construction of the Transfer Station. The Yeagers do not present any evidence of their claim of diminished value. Instead their attorney states that "[a]t the time of trial would be the most appropriate time for the Yeagers to offer any opinions as to value" (Doc. 70 at 23), implying that the court should just assume for summary judgment purposes that the Yeager's claim is true.

First, "the mere fact of depreciation or diminution of value [because of the location and operation of the business], without more," is insufficient to establish a nuisance. Milton v. Maples, 235 Ala. 446, 447, 179 So. 519, 520 (1938). But even if diminution in value was enough, the Yeagers have failed to meet their burden of proof that the residence has diminished in value. The court is aware that a homeowner is presumed to know the value of their home, however this presumption may be rebutted. In this case there is nothing to rebut, as the homeowner failed to provide even an estimate of the current valuation of the home; rather, they merely speculate that they could not sell the home for what it is worth. In sum, the Yeagers have not sustained their burden to overcome summary judgment on their claim of nuisance against ADS.

As to MBI, the Yeagers summarily state that MBI is a part of this case "due to its obligations under contract between it and ADS. In other words, is a party to the case by virtue of its operations within the facility and contract, but ADS controls." (Doc. 70 at 21).

MBI asserts their work is limited to loading "its trucks with waste delivered to the [Transfer Station] and hauling it to the Landfill." (Doc. 64 at 15). And thus, MBI argues it is improper to hold them liable for creating a nuisance since they did not "select the site for the [Transfer Station], determine where the building housing the 'tipping floor' would be constructed, construct the building and tipping floor, develop the Operation Plans for the [Transfer Station], or obtain or renew the operations permit for the [Transfer Station]." (Doc. 64 at 15). MBI responds to the Yeager's unsupported contract theory with long-standing legal support: "Alabama law requires Plaintiffs to present evidence that MBI's work at the [Transfer Station], pursuant to a contract or otherwise, caused the alleged nuisance. See Hilliard v. City of Huntsville Electric Utility Board, 599 So.2d 1108, 1113; Woods, 2018 WL 6067502, at 6*; E.S. Robbins Corp. v. Eastman Chemical Co., 912 F.Supp. 1476, 1494 (N.D. Ala. 1995)." (Doc. 73 at 13). MBI concludes their argument by pointing out the Yeagers "failed to present evidence MBI's work at the [Transfer Station] caused any alleged nuisance or damaged them in any way." (Doc. 73 at 14). The Court agrees.

The Yeagers have failed to present any evidence showing MBI caused the alleged nuisance. MBI did not construct the Transfer Station, does not control who or what enters the Transfer Station, and does not operate the Transfer Station. The Yeagers did not submit photos, videos, or any evidence of MBI's trucks uncovered or producing windblown litter. MBI, on the other hand, submitted evidence of MBI trucks covered/tarped awaiting departure from the Transfer Station. (Doc. 64-14 at 9). Ms. Yeager even admitted in her deposition that she has

never seen an uncovered MBI truck. (Doc. 64-2 at 21).  Accordingly, the Yeagers have failed to show MBI is the cause of the alleged nuisance and their nuisance claim against MBI fails as a matter of law. See Woods at *6; see also Tipler at 440.

### B.  Abandoned Claims

The Yeagers asserted five claims in their Complaint: 1) Nuisance; 2) Wanton conduct; 3) Negligent operations; 4) Injunctive relief; and 5) Violation of Alabama Administrative Code Rule 420-3-5-.12(2)(a)2. (Doc. 1-3 at 6-9).  Defendants' moved for summary judgment on all five counts in their Motions for Summary Judgment. (Docs. 64, 66).  The Yeagers did not respond to Defendants' 1) wanton conduct, 2) negligent operations, or 3) injunctive relief arguments. Defendants assert the Yeager's failure to respond to their arguments raised in their Summary Judgment Motions deems the claims abandoned as a matter of law. (Doc. 73 at 14; Doc. 74 at 5).

The law in this Circuit is clear: "grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." Clark v. City of Atlanta, Ga., 544 F. App'x 848, 855 (11th Cir. 2013) (quoting Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir.1995); see also Rossi v. Fulton Cty., Ga. 2013 WL 1213243, *13 (N.D.Ga. Feb. 13, 2013) (collecting cases). Thus, when a party is "opposing a motion for summary judgment, [they] may not rely on [their] pleadings to avoid judgment against [them]." Clark, 544 F. App'x at 855 (11th Cir. 2013) (quoting Resolution Trust Corp. 43 F.3d at 599 (11th Cir. 1995).

The Yeager's failure to respond to Defendants' 1) wanton conduct, 2) negligent operations, and 3) injunctive relief arguments in their Response to Defendants' Motions for Summary Judgment results in those three claims being abandoned as a matter of law. Id.

Consequently, summary judgment is granted in favor of Defendants for the 1) wanton conduct, 2) negligent operations, and 3) injunctive relief claims.

### IV.     Conclusion

Defendants' Motions for Summary Judgment are **GRANTED** as to all Counts (Counts I-V).

A Final Judgment consistent with terms of this Order shall be entered by separate document as required by Rule 58(a) of the Federal Rules of Civil Procedure.

**DONE** and **ORDERED** this the 19th day of **January 2022.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**